No. 63,412

In the Matter of PAUL E. PENDERGAST, *Respondent*.

(776 P.2d 1202)

Opinion filed July 14, 1989.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause for the petitioner.

*John J. Ambrosio,* of John J. Ambrosio, Chartered, of Topeka, argued the cause for the respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the disciplinary administrator against Paul E. Pendergast, of Topeka, an attorney admitted to the practice of law in Kansas. The amended complaint filed against respondent alleges violations of the Kansas Code of Professional Responsibility, Supreme Court Rule 225 (1988 Kan. Ct. R. Annot. 142) and Supreme Court Rule 207 (1988 Kan. Ct. R. Annot. 121).

A formal hearing before the panel of the Board for Discipline of Attorneys was held on November 22, 1988, at the Kansas Judicial Center, Topeka, Kansas. Respondent appeared in person and by counsel. The parties entered into a stipulation in which the respondent admitted that paragraphs 1 through 7 of the amended formal complaint are true and constitute a violation of DR 1-102(A)(4) and (6) (1988 Kan. Ct. R. Annot. 143) and Supreme Court Rule 207.

The stipulation by the parties was accepted by the hearing panel and made a part of its report. The parties stipulated that, on June 14, 1986, August 22, 1986, and October 24, 1986, Mr. Pendergast executed and delivered to Fairlawn Plazabank, Topeka, Kansas, three promissory notes in the amounts of $10,000, $1,500, and $5,000, respectively. In applying for these loans, the respondent knowingly omitted any reference in his financial statement to a promissory note payable to Fidelity State Bank, dated March 1, 1986, in the amount of $25,000. This was a material omission made with the intent to deceive the bank and to induce the bank into loaning money to the respondent. Fairlawn Plazabank filed a civil action against the respondent and obtained a judgment based upon fraud. The respondent initially

failed to cooperate or respond in any way to the investigation of this complaint.

At the hearing, respondent did not dispute the violations but offered evidence in mitigation. In this regard the panel, in part, made the following findings:

"9. The respondent voluntarily submitted himself for treatment for alcoholism and depression at the Crossroads Chemical Dependency Unit of Memorial Hospital, Topeka, Kansas, on September 26, 1988. He spent 28 days in in-patient treatment and is currently undergoing a 15-month out-patient program which requires constant monitoring by a therapist of that unit.

"10. The respondent is an alcoholic. At the time of his admission into the program at Crossroads, he was diagnosed as an alcoholic and as also suffering from a major depression. This was unusual because of the severity of the depression. The diagnosis concluded that he had been suffering from major depression for many years.

. . . .

"12. The alcoholic typically avoids investigation by others and is reluctant to cooperate. This avoidance and reluctance is caused by the alcoholism and depression. The respondent reacted in this case in this manner.

"13. The respondent has been open and honest in his participation in the program at the Crossroads Unit and the medical testimony is that, as long as he stays on his out-patient program of therapy, he can function in an adequate manner. The prognosis, however, is guarded.

. . . .

"15. The respondent has never engaged in the general practice of law. With a few exceptions, the respondent limited his practice to representation of corporate or trade associations before the Kansas Legislature or, on rare occasions, before the various administrative agencies of the State of Kansas. In addition, the respondent has an extensive record of service to those elected in high office in the State of Kansas and the United States of America. . . . [R]espondent [has] represented a number of large corporations and trade associations in their lobbying efforts . . . [and he has] served as Chief Counsel for the Kansas Department of Human Resources and in various other positions of extensive responsibility for the State of Kansas.

"16. The respondent's financial condition for the past many years has been extremely bad. The respondent has been broke for the past four years and he is presently insolvent.

"17. In the spring of 1986, the respondent [experienced serious] personal [and domestic] problems [which] contributed significantly to his depression and his inattention to his financial affairs.

. . . .

"19. The respondent is active in Alcoholics Anonymous and is currently undergoing an aftercare program in accordance with his alcoholic treatment program with Memorial Hospital, Crossroads Chemical Dependency Unit. He . . . regularly attends meetings and is making good progress towards recovery."

The panel found the mitigating factors persuasive and respon-

dent's progress in the treatment of his alcoholism and depression substantial. Nevertheless, the panel recommended respondent be suspended from the practice of law for one year, and that he be readmitted to the practice of law after that period of time upon the following conditions:

"1. That he repay or make satisfactory arrangement to repay the Fairlawn Plazabank for the full amount due them;

"2. That he make satisfactory progress in the Memorial Hospital, Crossroads Unit Aftercare Program and that his progress be certified by the therapist responsible for his care; and

"3. That the respondent pay the costs of these proceedings."

We find that there is clear and convincing evidence establishing that Mr. Pendergast violated DR 1-102(A)(4) and (6) and Supreme Court Rule 207. We agree with the panel that the mitigating circumstances are persuasive and respondent's progress has been substantial and impressive.

We also agree with the panel that Mr. Pendergast's conduct is serious. Respondent did not deal fairly and honestly with the bank nor did he cooperate in the initial investigation. Although we agree with the panel that the alcoholism and depression suffered by respondent "cannot be made into an excuse," we cannot ignore the effect that this disease had upon the conduct of the respondent in this case. As the panel noted, respondent's past accomplishments in government service are exceptional and admirable; he has made substantial progress in the treatment of his alcoholism and depression; and his legal practice has been and will be limited primarily to lobbying efforts for corporations and former clients. We are impressed with respondent's efforts to rehabilitate himself, which have included extensive inpatient treatment, outpatient counseling, attending five Alcoholics Anonymous meetings a week, and working with the Kansas Bar Association Impaired Lawyers Program. Mr. Pendergast has responded by accepting responsibility for his conduct, obtaining treatment, and taking steps to reimburse the bank for its loss. For all of these reasons, the majority feels that discipline should be suspended and that respondent should be placed on probation.

IT IS THE ORDER OF THE COURT that the imposition of discipline against Mr. Pendergast be and is hereby suspended, and he is placed on probation for the period of one year on the following conditions:

1. That he repay or make satisfactory arrangement to repay

Fairlawn Plazabank or its successor in interest for the full amount due it;

2. that he attend and complete the aftercare treatment program through the services for alcohol-related problems agency of Shawnee Community Mental Health Center;

3. that he continue to attend weekly Alcoholics Anonymous meetings;

4. that he take psychiatric therapy as recommended by his physicians and take any medication prescribed;

5. that he remain involved with the local and Kansas Bar Association Impaired Lawyers programs;

6. that he not violate any of the Model Rules of Professional Conduct;

7. that he cooperate fully with his supervisory attorney and the disciplinary administrator; and

8. that he abstain from the use of any and all intoxicating liquor, including 3.2 percent beer.

James E. (Jeb) Benfer III, chairman of the Topeka Bar Association Impaired Lawyers Committee, has agreed to supervise respondent during his period of probation, and respondent shall cooperate fully with Mr. Benfer and the disciplinary administrator. Mr. Benfer shall report respondent's progress to the disciplinary administrator on a quarterly basis. The disciplinary administrator shall submit a report to this court at the end of one year and, upon receipt of the report, this court shall upon notice make such further order as justice may require.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order may issue to the respondent and this court shall take whatever disciplinary action it deems just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the Kansas Reports, and that respondent pay the costs of these proceedings.